IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

*By staylor at 12:10 pm, Oct 20, 2017*

CRAIG DOUGLAS COOPER,

    Petitioner,

v.

J.V. FLOURNOY,

    Respondent.

CIVIL ACTION NO.: 2:17-cv-76

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Craig Cooper ("Cooper"), who is housed at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, (doc. 8). For the reasons which follow, I **RECOMMEND** that the Court **DISMISS without prejudice** Cooper's Petition due to his failure to exhaust his available administrative remedies prior to filing this Petition. I further **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Cooper leave to proceed *in forma pauperis*.

Alternatively, as explained below, if the Court finds that Cooper has exhausted his available administrative remedies and reaches the merits of his Petition, the Court should **DENY** Cooper's Petition. Cooper seeks credit toward his federal sentence for time that he spent in federal custody pursuant to a writ of habeas corpus *ad prosequendum*. Because Cooper served that time before his federal sentence commenced and all of that time was unquestionably credited toward his state sentence, Cooper cannot receive federal credit for that time of incarceration.

**BACKGROUND**

Cooper pleaded guilty in the United States District Court for the Middle District of Florida to one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and one count of distribution of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). (Doc. 8-1, p. 14.) The Middle District of Florida sentenced Cooper to 110 months' imprisonment on January 9, 2017. (Id. at p. 15.) As explained in more detail below, subsequent to his federal sentencing, Cooper was returned to the custody of the State of Florida to answer pending state charges. (Id. at p. 4.) The state court imposed a sentence of 610 days of incarceration. (Id. at p. 41.) That sentence was primarily satisfied by the time Cooper spent in secondary federal custody pursuant to a writ of habeas corpus *ad prosequendum*. Cooper came into primary federal custody on January 31, 2017, and he is currently incarcerated at FCI Jesup. (Id. at pp. 10, 45.) The Bureau of Prisons ("BOP") calculates his projected release date as January 18, 2025, via good conduct time release. (Id. at p. 10.)

In his Petition, Cooper contends that the BOP has miscalculated his release date. (Doc. 1.) Specifically, he contends he should be given credit for the 429 days that he spent in federal custody from November 9, 2015, to January 11, 2017. (Id. at p. 3.) Respondent maintains that Cooper failed to exhaust his available administrative remedies before bringing this Petition. (Doc. 8, pp. 5–6.) Respondent further contends Cooper has received all of the credit against his federal sentence to which he is entitled. (Id. at p. 6–8.) Specifically, Respondent maintains that 18 U.S.C. § 3585(b) and BOP Program Statement 5880.28, Sentence Computation Manual (CCA of 1984), prohibit the application of the requested prior custody credit Cooper

2

seeks, because the time at issue was already applied toward the service of his state sentence. (Id.)

## DISCUSSION

I. **Whether Cooper Exhausted his Administrative Remedies**

   A. **Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief. Id. at 214–15. Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face

of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)).  Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91.  In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218.  It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted).  Thus, exhaustion requirements are applicable to habeas petitions.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B.     Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve


the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Cooper's Efforts at Exhaustion

Inmates at FCI Jesup may grieve disputes through the BOP's multi-level administrative remedy procedure. This procedure is codified in 28 C.F.R. §542.10, *et seq.*, and provides for the formal review of any complaint which relates to any aspect of the inmate's confinement, including disputes of sentence computations. (Doc. 8-1, pp. 5–7.) This procedure generally commences with an attempt at informal resolution at the local level, which, if unsuccessful, is followed by filing a formal complaint with the Warden using a BP-9 form. (Id.) An inmate may appeal the Warden's response to the inmate's complaint by filing a BP-10 form with the Regional Director. (Id.) If the Regional Director denies the appeal, the inmate may then file a final appeal with the Office of General Counsel in Washington, D.C., by submitting a BP-11 form. (Id.); 28 C.F.R. § 542.15. An inmate must appeal through all three levels of the process to exhaust his administrative remedies.

The evidence before the Court establishes that Cooper has not pursued any administrative remedies related to the allegations raised in his Petition. (Doc. 8-1, pp. 7, 49.) Indeed, he has not filed any grievances at all during his federal incarceration. (Id.) Cooper's claims concern BOP-related matters, which must be appealed through the above-described process, and Cooper failed to do so.

In his Petition, Cooper admits that he did not "appeal the decision, file a grievance, or seek an administrative remedy." (Doc. 1, p. 3.) He then only offers information regarding efforts he made to have his sentencing court address his requests for prior custody. (Id.) Thus, even accepting Cooper's account as true, under the first Turner step, he failed to exhaust the BOP's available administrative remedies prior to filing his Petition. Moreover, if the Court were to proceed to the second Turner step, the Court finds that Respondent's account of Cooper's exhaustion to be reliable and accurate. Mr. Vincent Shaw's affidavit and supporting materials, (doc. 8-1), reveal that administrative remedies were available to Cooper to raise the claims regarding his sentence calculation, but he failed to pursue those remedies.

Cooper failed to properly exhaust his available administrative remedies prior to filing this Petition. Consequently, the Court should **DISMISS without prejudice** Cooper's Petition.

## II.     Whether the BOP Miscalculated Cooper's Sentence

The Court need not address the merits of Cooper's claims due to his failure to exhaust his available administrative remedies. However, if the Court does reach the substance of his arguments, it should **DENY** his Petition for the following reasons.

It is the duty of the United States Attorney General, acting through the BOP, to determine the date a defendant's sentence commenced and the amount of credit due for the time served by the defendant prior to that commencement. United States v. Alexander, 609 F.3d 1250, 1259 (11th Cir. 2010). "A federal district court reviews for abuse of discretion the BOP's decision under [18 U.S.C.] § 3585 regarding commencement of a federal sentence and the grant of credit for prior custody." Paradis v. Keller, No. 1:10-CV-2354-TWT-AJB, 2011 WL 2790480, at *4 (N.D. Ga. June 13, 2011), *report and recommendation adopted*, 2011 WL 2790472 (N.D. Ga. July 14, 2011). To determine whether the BOP properly calculated Cooper's sentence, the Court

7

must begin with the plain language of the statute itself.  <u>Harris v. Garner</u>, 216 F.3d 970, 972 (11th Cir. 2000) (en banc) ("We begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision.").  For sentences imposed under the Sentencing Reform Act of 1984, Section 3585 controls questions of sentence commencement and credits for prior custody.  This statute provides:

> (a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit of Prior Custody. – A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences —
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> <u>that has not been credited against another sentence</u>.

18 U.S.C. § 3585 (emphasis added).

The following facts regarding Cooper's criminal history make the computation of his sentence less straightforward than some petitioners:

- On May 27, 2015, local law enforcement officers in Duval County, Florida, arrested Cooper.  (Doc. 8-1, pp. 3, 20–27.)

- On November 9, 2015, the United States Marshals Service took Cooper into temporary federal custody pursuant to a writ of habeas corpus *ad prosequendum* for him to answer federal charges in the Middle District of Florida, Case Number 3:15-cr-77-J-34JRK.  (<u>Id.</u> at pp. 29–36.)

- On January 9, 2017, the United States District Court for the Middle District of Florida sentenced Cooper to his current 110-month term of incarceration in Case Number 3:15-cr-77-J-34JRK. (Id. at pp. 14–18.)

- Following his federal sentencing, Cooper was released from his federal writ and returned to State of Florida authorities. (Id. at p. 4.)

- On January 26, 2017, the Circuit Court of Duval County, Florida, sentenced Cooper to 610 days' imprisonment for aggravated battery and possession of a firearm by a convicted felon. (Id. at pp. 38–43.) The Circuit Court gave Cooper credit toward this sentence for 610 days of custody served prior to the imposition of the sentence. (Id. at p. 42.)

- Cooper then came into primary federal custody five (5) days after his state sentencing on January 31, 2017. (Id. at pp. 10–12, 45.)

### A.  Whether the BOP Abused its Discretion in Calculating the Commencement of Cooper's Federal Sentence

In determining the proper credit, the Court must first determine when Cooper's sentence commenced. A sentence "'cannot begin prior to the date it is pronounced, even if made concurrent with a sentence already being served.'" Coloma v. Holder, 445 F.3d 1282, 1284 (11th Cir. 2006) (quoting United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980)). Cooper's federal sentence "commence[d] on the date [Cooper was] received in custody awaiting transportation to, or arrive[d] voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). On January 31, 2017, Cooper entered federal custody to commence serving his 110-month sentence obtained in the Middle District of Florida. (Id. at pp. 10–12, 45.) Thus, his federal sentence began on that date.

Cooper's federal sentence clearly did not commence on the date he was arrested by local authorities, May 27, 2015, or the date he entered federal custody on a writ of habeas corpus *prosequendum*, November 9, 2015, as those dates predated the date his federal sentence was imposed. Moreover, Cooper's sentence did not commence on the date his federal sentence was imposed, January 9, 2017, because, on that date, Cooper was not "received in custody awaiting transportation to" the official detention facility where his federal sentence was to be served, and he did not "arrive voluntarily to commence service of sentence" at the facility where that sentence was to be served. Rather, he was transferred back to State of Florida authorities to answer his state charges. (Doc. 8-1, p. 4.)

Moreover, while Cooper was in federal custody from November 9, 2015, to January 9, 2017, that custody was only secondary custody pursuant to a writ of habeas corpus *ad prosequendum*. "'[I]if a defendant is in state custody and he is turned over to federal officials for federal prosecution, the state government's loss of jurisdiction is only temporary. The prisoner will be returned to state custody at the completion of the federal proceedings or the federal sentence if the federal government wishes to execute it immediately.'" Powell v. Jordan, 159 F. App'x 97, 99–100 (11th Cir. 2005) (quoting Causey v. Civiletti, 621 F.2d 691, 693 (5th Cir. 1980)). "A writ of habeas corpus *ad prosequendum* is only a loan of the prisoner to another jurisdiction for criminal proceedings in the receiving jurisdiction." Civiletti, 621 F.2d at 693.[2]

---

[2] To the extent that Cooper argues that the BOP miscalculated the commencement date of his federal sentence because the state sentence and federal sentence should have run concurrently, not consecutively, that argument is unavailing. "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." United States v. Ballard, 6 F.3d 1502, 1505 (11th Cir. 1993); see also 18 U.S.C. § 3584(a). The authority to order a federal sentence to run concurrently with or consecutively to any other sentence rests solely with the federal sentencing court. See United States v. Andrews, 330 F.3d 1305, 1307 n.1 (11th Cir. 2003); Finch v. Vaughn, 67 F.3d 909 (11th Cir. 1995) ("We specifically have held that a federal court is authorized to impose a federal sentence consecutive to a state sentence, although the state court explicitly made its sentence concurrent with the federal sentence.") (citing United States v. Adair, 826 F.2d 1040, 1041 (11th Cir. 1987)). Thus,

The BOP committed no error, much less abused its discretion, when determining that Cooper's federal sentence commenced on January 31, 2017, the date he came into primary federal custody.

B. **Whether the BOP abused its Discretion in Denying Cooper Credit for Time Served Prior to Commencement of his Federal Sentence**

Under Section 3585(b), in some circumstances, a defendant is entitled to credit for time he spent in custody prior to sentence commencement. However, a defendant can only receive such credit for time that "has not been credited against another sentence." 18 U.S.C. § 3585(b). Under this provision, the BOP granted Cooper five (5) days of "jail credit" from January 26, 2017, to January 30, 2017. (Doc. 8-1, pp. 4, 12.) During these five (5) days, Cooper had completed his state sentence, and he was waiting in a local facility for the United States Marshals Service to take custody of him.

Cooper contends that the BOP should credit him an additional 429 days of prior custody for the time he spent in custody from November 9, 2015, to January 11, 2017. (Doc. 1, p. 3.) During this period, Cooper was in federal custody pursuant to a writ of habeas corpus *ad prosequendum*. This time preceded the commencement of his federal sentence. Under the plain language of Section 3585(b), the BOP cannot grant Cooper prior credit toward his federal sentence for this time if the time was already credited toward another sentence. The Circuit Court of Duval County expressly gave Cooper credit for 610 days of custody served prior to the imposition of his January 26, 2017, state sentence. (Doc. 8-1, p. 42.) The period from the date

---

only the Middle District of Florida could have ordered that Cooper's federal sentence run concurrently with the service of his state sentence. This is true even though Cooper's state sentence had not yet been imposed. The United States Supreme Court has held that a district court has authority to order that a federal sentence be consecutive to an anticipated state sentence that has not yet been entered. Setser v. United States, 566 U.S. 231 (2012). Because the Middle District of Florida did not order Cooper's federal sentence to run concurrently with his state sentence, the sentences must run consecutively. Ballard, 6 F.3d at 1505.

of Cooper's original arrest to the date of his state sentencing (May 27, 2015, to January 26, 2017) spanned exactly 610 days.  The 429 days for which Cooper seeks prior custody credit (November 9, 2015, to January 11, 2017) fell squarely within that period.  Thus, the state court clearly credited these 429 days toward Cooper's state sentence.  The BOP cannot now give him credit against his federal sentence for these days, because to do so would be to give him "double credit", which is prohibited by Section 3585(b).

Consequently, should the Court reach the merits of Cooper's arguments, it should **DENY** his Petition.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Cooper leave to appeal *in forma pauperis*.  Though Cooper has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or

12

fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Cooper's Petition and the related pleadings, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons and the manner set forth above, I **RECOMMEND** that the Court **DISMISS without prejudice** Cooper's Petition for Writ of Habeas Corpus. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Cooper leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A

party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Cooper and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of October, 2017.

/s/ R. Stan Baker

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA